IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

L.B., a minor, by and through )
Next Friend, MICHAEL BUSCHMAN, )
)
*Plaintiff*, )
) Case No. 2:18-cv-04060-BCW
vs. )
)
JEFFERSON CITY SCHOOL DISTRICT, )
)
ET AL., )
) JURY TRIAL DEMANDED
*Defendants*. )

**PLAINTIFF'S SUGGESTIONS OPPOSING
DEFENDANT JEFFERSON CITY PUBLIC SCHOOLS' PARTIAL MOTION
TO DISMISS COUNT II OF PLAINTIFF'S FIRST AMENDED COMPLAINT**

COMES NOW Plaintiff, by and through counsel, and in compliance with Local Rule 7.0 and this Court's Order of June 6, 2018 [Doc. # 34], hereby opposes Defendant Jefferson City Public Schools' Partial Motion to Dismiss Count II of Plaintiff's First Amended Complaint and Suggestions in Support [Doc. # 30] ("Defendant's Motion") with the following suggestions.

I. Background

Count II of the First Amended Complaint states a claim against Defendant Jefferson City School District[1] ("the District") under the Missouri Human Rights Act ("the Act"). The District's repeated and egregious failures to follow its own policies, which it established for student safety, allowed an abuser repeatedly to call L.B. out of school, where she should have

---

[1] School Board Policy AA states, "The official name of the school district shall be Jefferson City School District." Defendant's Motion states, "Jefferson City Public Schools is the property entity." See Doc. # 4, p. 1 at n.1.

Page **1** of **13**

been safely learning, in order to assault her sexually.  In her suit, L.B. seeks to hold the District liable for its conduct, without which the sexual intercourse never would have occurred.

The First Amended Complaint [Doc. # 28] ("the Complaint") makes two changes to the counts pled in the initial Petition.  First, Count I, which comprises the elements of a violation of § 213.065 R.S. Mo. as laid out in *Doe ex rel. Subia v. Kansas City, Mo. Sch. Dist.*, 372 S.W.3d 43 (Mo. App. 2012), is amended to be directed at all Defendants—not just the District but also the individual defendants.  Second, Count II adds a claim against the District under § 213.070(3) R.S. Mo., which prohibits discrimination by political subdivisions of the State. Count II alleges that L.B. is a female, that the District is a political subdivision of the State, that the District's conduct constitutes discrimination against L.B. on the basis of sex, and that L.B. was damaged by the District's conduct.  Complaint, ¶¶ 61-64 at pp. 8-9.

Defendant's Motion addresses Count II only.  The District argues (1) that it is not a "person" under the Act and (2) that § 213.070(3) R.S. Mo. applies to political subdivisions only "as it relates to employment, disability, or familial status as it relates to housing."  The first argument is inapposite, and the second argument is incorrect.  Accordingly, Defendant's Motion should be denied.

II.  Standard for Judgment

Defendant's Motion is brought under Fed. R. Civ. P. 12(b)(6).  To avoid dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *McCaffree Fin. Corp. v. Principal Life Ins. Co.*, 811 F.3d 998, 1002 (8th Cir. 2016). "A claim is plausible on its face 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged.'" *McCaffree Fin.*, 811 F.3d at 1002 (quoting *Iqbal*, 556 U.S. at 678). The Court "must accept the plaintiff's factual allegations as true and grant all reasonable inferences in the plaintiff's favor." *Phipps v. Fed. Deposit Ins. Corp.*, 417 F.3d 1006, 1010 (8th Cir.).

### III.  Legal Argument

Count II states a claim under the Act's prohibition on discrimination by political subdivisions of the state, which is codified at § 213.070(3) R.S. Mo.  Most of Defendant's Motion focuses on § 213.065 R.S. Mo., but that provision is inapposite.  The District erroneously claims, "Plaintiff has never [pled], or alleged, that she is attempting to bring a claim under this section," *see* Defendant's Motion at p. 6; but Count II does exactly what the District alleges it does not do.  The section of the Act that pertains to Count II is not limited to sex discrimination in employment or housing, and the Act is broad enough to encompass the claim in Count II. Therefore, Defendants' Motion should be denied.

**A.**     **The Act's prohibition on sex discrimination by political subdivisions is not limited to employment or housing.**

The part of Defendant's Motion that does address § 213.070(3) R.S. Mo. begins with an argument that the section applies only to discrimination as it relates to employment or housing. *See* Defendant's Motion, pp. 6-7.  The District's reading of § 213.070(3) R.S. Mo. is incorrect, and it is the type of argument that the Missouri Court of Appeals has rejected.

Under the Act, it is an unlawful discriminatory practice for any political subdivision of the State "to discriminate on the basis of race, color, religion, national origin, sex, ancestry, age, as it relates to employment, disability, or familial status as it relates to housing."  § 213.070(3) R.S. Mo.  The District gives this section an implausible reading: that discrimination on the basis of sex is unlawful only as it relates to employment or housing.  As a grammatical matter, the

term "as it relates to employment" contains a singular pronoun.  Thus, the antecedent to "it" must be the singular noun "age."  Similarly, the singular pronoun in the phrase "as it relates to housing" must refer to the term "familial status."  If discrimination on all the bases listed—race, color, religion, national origin, sex, ancestry, and age—were to be limited to the employment context, then the modifying phrase would have to read "as they relate to employment."  Moreover, reading the phrase "as it relates to housing" to apply to all the preceding bases of discrimination would require an even more tortured and grammatically fraught interpretation.

The reasonable reading of § 213.070(3) R.S. Mo. applies the phrase "as it relates to employment" only to the basis of age.  The phrase "as it relates to housing" applies only to the basis of "familial status."  Adding some clarifying punctuation, the section may read, "It shall be an unlawful discriminatory practice . . . [f]or . . . any political subdivision of this state to discriminate on the basis of [1] race; [2] color; [3] religion; [4] national origin; [5] sex; [6] ancestry; [7] age, as it relates to employment; [8] disability; or [9] familial status as it relates to housing."  This reading is commanded not only by the rules of grammar but also by case precedent interpreting a similar section elsewhere in the Act.

The definition of "discrimination" under the Act is limited to actions taken because of "race, color, religion, national origin, ancestry, sex, or age as it relates to employment, disability, or familial status as it relates to housing." § 213.010(6) R.S. Mo.  In *Doe ex rel. Subia v. Kansas City, Mo. Sch. Dist.*, 372 S.W.3d 43 (Mo. App. 2012), the school district argued that "the portion of the definition that reads 'as it relates to employment, disability, or familial status as it relates to housing' limits *all* types of discrimination—including sex discrimination—as actionable under the MHRA only if such discrimination occurs in the context of 'employment, disability, or

familial status as it relates to housing.'" *Subia*, 372 S.W.3d at 50. The Court of Appeals stated frankly, "The School District's argument misinterprets the statute." *Id.*

The court went on to clarify the phrasing in the Act's definition of "discrimination." "The MHRA's definition of discrimination prohibits unfair treatment on nine bases: race, color, religion, national origin, ancestry, sex, age as it relates to employment, disability, or familial status as it relates to housing." *Id.* "The phrase 'as it relates to employment' limits only *age* discrimination claims to the employment context." *Id.* "Lastly, the phrase 'as it relates to housing' limits only *familial status* discrimination claims to the housing context." *Id.* at 50-51.

The text of § 213.070(3) R.S. Mo. is nearly identical to that of § 213.010(6) R.S. Mo. In addition to the basic grammatical rules of pronoun-antecedent agreement, Missouri case law compels the rejection of the interpretation attempted by the District. The plain text of the statute shows that sex discrimination in any form on the part of a political subdivision is unlawful. Count II cannot be dismissed merely because it does not arise from an employment or a housing context.

**B.     The Act is broad enough to encompass the claim in Count II.**

The District's other argument, that § 213.070(3) R.S. Mo. does not support a claim for sex discrimination where a student is sexually abused because of a school's failures to follow its safety policies, appears to be a matter of first impression. Because the Missouri Supreme Court has not spoken on this issue, the District Court "must attempt to predict what that court would decide if it were to address the issue." *Lindsay Mfg. Co. v. Hartford Acc. & Indem. Co.*, 118 F.3d 1263, 1268 (8th Cir. 1997). To make its prediction, the Court "may consider relevant state precedent, analogous decisions, considered dicta, scholarly works and any other reliable data." *Ventura v. Titan Sports, Inc.*, 65 F.3d 725, 729 (8th Cir. 1995).

Since 2012, the *Subia* case has been the seminal precedent on the issue of school-district liability for school-related sexual assault of public-school students. In *Subia*, the plaintiff alleged that he was sexually harassed and assaulted by another elementary student on multiple occasions at school. *Subia*, 372 S.W.3d at 46. He alleged that school administrators and employees "had knowledge of the perpetrator's inappropriate and sexualized behavior and his aggressive tendencies" but that they nonetheless allowed the perpetrator the use the restroom at the same time with his peers. *Id.* Plaintiff's theory was that, due to the school district's actions and inactions, he was deprived of the full, free, and equal use and enjoyment of the school, which is a place of public accommodation, and of its services. *Id.* The defendants argued that the Act did not apply to the student's claim.

The court interpreted the Act in light of its purpose as a remedial statute. *Id.* at 47. "[B]ecause Section 213.065 is a remedial statute, we should interpret it 'liberally to include those cases which are within the spirit of the law and all reasonable doubts should be construed in favor of applicability to the case.'" *Id.* at 48 (quoting *Mo. Comm'n on Human Rights v. Red Dragon Rest., Inc.*, 991 S.W.2d 161, 166-67 (Mo. App. 1999)). The court went on to hold that a public school is a place of public accommodation, *Subia*, 372 S.W.3d at 50, and that the Act prohibits sex discrimination in all public accommodations, not just in "employment, disability, or familial status as it relates to housing," *id.* at 51. The court included in its rationale the fact that "Missouri courts have long considered public school districts to be both subdivisions of this state and public corporations." *Id.* at 48. The court presumed that, in writing the Act, the legislature "was aware that judicial opinions had interpreted the terms 'subdivision' and 'public corporation' to include public school districts and intended the terms to be construed in the statute consistently with those opinions." *Id.*

The court then considered the school district's liability where no school official has personally engaged in the harassment. Critically, the court made clear that the plaintiff was "not trying to hold the School District liable for the perpetrator's conduct but [was] instead trying to hold the School District liable for its own conduct." *Id.* Thus, the school district was not vicariously responsible for the sexual harassment and assault of the perpetrator, but it was directly liable for remaining idle when it knew or should have known of the harassment.

Ultimately, the court articulated the standard for school-district liability for peer-on-peer sexual harassment. The court applied the "knew or should have known" standard from the Act's employment cases. *Id.* at 54. It then explained why the school-related sexual assault of a student constitutes sex discrimination. The court held, "[Plaintiff's] allegation that he was sexually harassed and sexually assaulted on multiple occasions in the boys' restroom sufficiently pled that he was discriminated against, *i.e.*, subjected to 'unfair treatment based on . . . sex,' . . . in his use of the school in that he was denied the full and equal use and enjoyment of the school and its services." *Id.* at 55 (quoting § 213.010(5) R.S. Mo.). The plaintiff's petition therefore stated a cause of action.

Notably, the school district applied for transfer of the case to the Supreme Court of Missouri. The Supreme Court denied the application for transfer.[2] From the Court's denial, this Court may infer that the Missouri Supreme Court was satisfied with the holding in *Subia*.

Recently, this Court applied *Subia* to a case of off-campus sexual assault. In *Martin v. North Kansas City Sch. Dist.*, No. 17-cv-073, slip op., 2018 WL 614966 (W.D. Mo. Jan. 29, 2018),[3] the student was a minor female who was sexually assaulted and raped off-campus by her former teacher, who was employed by the school district. The plaintiffs alleged that, prior to the

---

[2] A copy of the Supreme Court's order denying the application for transfer is attached for the Court's reference.
[3] A copy of the *Martin* slip opinion is attached for the Court's reference.

sexual assault, the perpetrator groomed the student via social media, text message, and cell phone. *Id.* at 7. The school district pointed out that none of the conduct was alleged to have taken place on district premises. *Id.* The district argued that the location of the harassment was important because, "in the Title IX context, a district's degree of control over the harasser and the environment in which the harassment occurs is relevant for liability purposes." *Id.* at 8.

This Court declined to apply Title IX standards to § 213.065 R.S. Mo. It looked at the holding, rule, and rationale from *Subia*. *Id.* at 8-9. Clearly and explicitly, this Court held, "there is nothing in the statute or even in the [*Subia*] Court's holding which requires that the assault or harassment occur on school property." *Id.* at 9. This Court emphasized the facts that the school district knew or should have known of the danger posed by the perpetrator. *Id.* at 9-10. Accordingly, the school district could be liable for the off-campus sexual assault.

In *Martin*, the school district argued that it was not a "person" under the Act. This Court noted the long-standing rule in Missouri law that public school districts are "purely public corporations." *Id.* at 4 (quoting *Consolidated Sch. Dist. No. 1 v. Bond*, 500 S.W.2d 18, 19 (Mo. App. 1973)). It also noted the rationale from *Subia*, above, regarding the character of school districts as public corporations. Because the Act's definition of "person" includes "corporations," § 213.010(15) R.S. Mo., this Court decided that a school district is a person subject to the Act.

Defendant's Motion relies heavily on *State ex rel. Blue Springs Sch. Dist. v. Grate*, No. WD81197, 2018 Mo. App. LEXIS 443 (W.D., May 1, 2018). In *Grate*, the Court of Appeals of Missouri held that § 213.065 R.S. Mo. does not apply to school districts because they are not "persons" under the Act. However, that holding does not apply to Count II, which, as explained above, is pled under § 213.070(3) R.S. Mo. In fact, the *Grate* court declined to make its writ of

prohibition permanent on grounds that the plaintiff's claim might sound under § 213.070(3) R.S. Mo. The plaintiff has filed an application for transfer to the Supreme Court of Missouri.[4] As of the filing of these Suggestions, the Court has not ruled on that application.

To be fair, the usefulness of the *Grate* decision to the issue at bar is limited. *Grate* says merely that the issue, whether or not § 213.070(3) R.S. Mo. constitutes an express abrogation of sovereign immunity for discrimination in public accommodation, is undecided. It does not directly compel this Court to deny Defendant's Motion. But it does not support the argument that Count II should be dismissed under Rule 12(b)(6).

As the issue raised against Count II of the Complaint by Defendant's Motion is a matter of first impression, this Court must take *Subia*, *Martin*, and *Grate* into consideration in order to predict how the Supreme Court of Missouri would rule. *Subia* suggests that the Supreme Court believes that a school district may be liable under the Act for school-related sexual assault of a student, even where the perpetrator is not an employee or agent of the district. *Martin* persuasively explains why a school district may be liable for off-campus sexual assault. *Grate* acknowledges that a *Subia*-type claim may sound under § 213.070(3) R.S. Mo. In light of these sources, there is little, if any, reason to predict that the Supreme Court of Missouri would dismiss Count II under § 213.070(3) R.S. Mo.

The Act is a remedial statute that must be interpreted liberally. It applies not only to public accommodations but also to political subdivisions of the State. It has supported claims for school-related sexual assault of a student, regardless of the relationship of the perpetrator to the school district and of the location of the assault. The District would want this Court to predict that the Supreme Court of Missouri would rule that Count II fails to state a cause of action. However, such a prediction would not be supported by the precedential case law.

---

[4] A copy of the application for transfer is attached for the Court's reference.

## C. The Complaint alleges facts that state a claim under the Act.

As stated above, Count II of the Complaint contains the elements of school-district liability for sexual harassment of a student, just as they are laid out in *Subia*. The Complaint describes the JCSD policies at issue,[5] explains the District's own stated reason for those policies,[6] and articulates that the District knew or should have known of the danger caused by its failure to follow those policies[7]. The pattern of abuse, as alleged in the Complaint, begins with L.B. at school, proceeds with Defendants' repeated policy violations which allow a perpetrator to call L.B. out of school, and results in repeated sexual assaults on L.B. by the perpetrator who took advantage of the Defendant's policy failures.[8] The Complaint states that the only times the perpetrator was able to have sex with L.B. were during school hours,[9] "[d]ue to the presence and attention of other adults" in L.B.'s life[10].

The facts in the Complaint point directly to the District's liability. "At some time between [the beginning of the policy violations and the end of the abuse], Defendants knew or should have known that the Abuser was taking L.B. out of JCHS in violation of the District Policies in order to have sex with her." *Id.*, ¶ 46 at p. 6. The policies, *inter alia*, required school officials to refuse telephone requests for early dismissal unless the caller could be positively identified as the student's parent or guardian and required persons requesting release of a student to present proper identification prior to release of the student. Complaint, ¶¶ 15-18 at p. 4. If the District had followed those policies, it would have known that the abuser was calling L.B. out of

---

[5] *See* Complaint, ¶¶ 9-20 at pp. 3-4.
[6] *Id.*, ¶ 21 at p. 4.
[7] *Id.*, ¶ 22 at p. 4.
[8] *Id.*, ¶¶ 27-44 at pp. 5-7.
[9] *Id.*, ¶¶ 32-42 at pp. 5-6.
[10] *Id.*, ¶ 26 at p. 5.

school for illicit purposes, and the abuse would not have occurred as it did. These facts present a much stronger case for 'should have known' liability than *Subia*, where the allegation was that school administrators and employees "had knowledge of the perpetrator's inappropriate and sexualized behavior and his aggressive tendencies." *Subia*, 372 S.W.3d at 46.

The District is responsible for the denial of the advantages, services, and privileges of the school and its services. Its policy failures were the *sine qua non* of the sexual abuse by the perpetrator, at a time when L.B. should have been safely learning inside the school building. "If Defendants had followed the District Policies, the Abuser never would have been able to have sexual intercourse with L.B." Complaint, ¶ 45 at p. 7. As a direct and proximate result of the Defendant's failures, L.B. "was deprived of the accommodations, advantages, facilities, services, or privileges made available in the public school" and "was subjected to unfair treatment based on sex in that she was denied the full and equal use and enjoyment of the school and its services." *Id.*, ¶¶ 47-48 at p. 7. Accord *Subia*, 372 S.W.3d at 55.

Count II of the Complaint states a claim under the Act. Defendant's Motion argues that Count II fails because L.B. "does not allege she was treated differently than other members of the opposite sex at Jefferson City High School regarding release procedures." Defendant's Motion, p. 7. However, *Subia* defines "discriminate" broadly enough to view an allegation that a student "was sexually harassed and sexually assaulted on multiple occasions in the boys' restroom" to mean that "'he was discriminated against, *i.e.*, subjected to 'unfair treatment based on . . . sex,' . . . in his use of the school in that he was denied the full and equal use and enjoyment of the school and its services." *Subia*, 372 S.W.3d at 55. The District also argues that the Complaint "contains no allegations identifying any public accommodations, advantages, facilities, services, or privileges she was allegedly denied because of her sex." Defendant's

Motion, p. 7.  But the Complaint tells the story of L.B.'s being deprived of her public education and her safety, among other things.

The Complaint does not seek to hold the District vicariously liable for the perpetrator's actions.  As in *Subia*, Plaintiff is "instead trying to hold the School District liable for its own conduct."  372 S.W.3d at 51.  That conduct comprises the District's repeated failures to follow the policies it established for student safety under circumstances showing that the District knew or should have known about the abuse that was occurring.  Such unfair treatment constitutes discrimination under the Act as interpreted by the Missouri Court of Appeals.

IV.  Conclusion

None of the reasons given in Defendant's Motion supports a dismissal of Count II.  L.B.'s claim is not brought under § 213.065 R.S. Mo., and the case law does not require dismissal under § 213.070(3) R.S. Mo.  This Court must predict how the Supreme Court of Missouri would rule on this issue, but the District has not given any evidence that the Supreme Court would find a failure to state a claim.  Defendant's Motion should be denied.

RESPECTFULLY SUBMITTED

 */s/ Daniel J. Rhoads*
Daniel J. Rhoads, 59590 MO
**THE RHOADS FIRM, LLC**
12741 St. Charles Rock Rd.
St. Louis, MO 63044
Phone:  (314) 225-8848
Fax:  (314) 754-9103
therhoadsfirmllc@gmail.com

*Attorney for Plaintiff*
*L.B., a minor, by and through*
*Next Friend, Michael Buschman*

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing was filed electronically with the Clerk of the Court on June 28, 2018, to be served by operation of the Court's electronic filing system upon:

Christopher Rackers
Ryan Bertels
Schreimann, Rackers & Francka, LLC
931 Wildwood Dr., Suite 201
Jefferson City, MO 65109
cpr@srfblaw.com
rb@srfblaw.com

*Attorneys for Defendants*

                                                             */s/ Daniel J. Rhoads*

Page **13** of **13**

Case 2:18-cv-04060-BCW   Document 35   Filed 06/28/18   Page 13 of 13