IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION


L.B., a minor, by and through  )
Next Friend, MICHAEL BUSCHMAN, )
          )
   *Plaintiff*,    )
          )  Case No.  2:18-cv-04060-BCW
     vs.    )
          )
JEFFERSON CITY SCHOOL DISTRICT, )
          )
<u>ET AL.</u>,        )
          )  JURY TRIAL DEMANDED
   *Defendants*.   )

### PLAINTIFF'S SUGGESTIONS IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

   COMES NOW Plaintiff, by and through counsel, and in accordance with Local Rules of the

United States District Court for the Western District of Missouri 7.0 and 56.1(b), opposes

Defendants' Motion for Summary Judgment [Doc. # 70] as follows:

Case 2:18-cv-04060-BCW   Document 75   Filed 11/19/18   Page 1 of 30

# TABLE OF CONTENTS

Table of Authorities …………………………………………………………………………….. 3

I. Plaintiff's Response to Defendants' Statement of Uncontroverted Material Facts ………. 5

II. Procedural Background …………………………………………………………………… 11

III. Standard for Judgment …………………………………………………………………… 12

IV. Legal Argument ………………………………………………………………………… 12

    A.     Count I states a viable claim under the MHRA and is well-supported by facts in the record.   13

        1.     Count I is not time-barred.   13

        2.     Defendant Robert James is a proper party.   17

        3.     The individual Defendants had sufficient personal involvement in the violations to be liable under the MHRA.   19

    B.     The immunities claimed by the Individual Defendants are not available to them because of their egregious breaches of ministerial duties.   21

        1.     Official immunity does not apply because the Individual Defendants breached ministerial duties.   21

        2.     Defendant James is not immune to Counts III, IV, and V under the Coverdell Act.   25

        3.     The Public Duty Doctrine does not apply to this case.   26

    C.     The District and the Individual Defendants may be liable under § 1983.   27

V. Conclusion  ………………………………………………………………………… 29

Case 2:18-cv-04060-BCW   Document 75   Filed 11/19/18   Page 2 of 30

# TABLE OF AUTHORITIES

<u>CASE LAW</u>

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ……………………………………….... 12

*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011) ………………………………………………………… 29

*Board of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397 (1997) ………………… 27

*Davis v. Monroe County Bd. Of Educ.*, 526 U.S. 629 (1999) …………………………….... 28, 29

*Doe ex rel. Subia v. Kansas City, Mo. Sch. Dist.*, 372 S.W.3d 43 (Mo. App. 2012) …… 19-20

*Farrow v. Saint Francis Med. Ctr.*, 407 S.W.3d 579 (Mo. banc 2013) ………………. 13-14, 15

*Fitzgerald v. Barnstable Sch. Committee*, 555 U.S. 246 (2009) ………………………… 28, 29

*Giandinoto v. Chemir Analytical Servs., Inc.*, 545 F. Supp. 2d 952 (E.D. Mo. 2007) ……..… 18

*Greenwood v. Ross*, 778 F.2d 448 (8th Cir. 1985) …………………………………….. 17-18, 19

*Harris v. City of Pagedale*, 821 F.2d 499 (8th Cir. 1987) ……………………………………. 27

*Hill v. Ford Motor Co.*, 324 F. Supp. 2d 1028 (E.D. Mo. 2004) …………………….……..… 17

*J.M. v. Lee's Summit Sch. Dist.*, 545 S.W.3d 363 (Mo. App. W.D. 2018) ………………… 21-24

*Jones v. McNeese*, 675 F.3d 1158 (8th Cir. 2012) ……………………………………… 28-29

*Lackey v. Iberia R-V Sch. Dist.*, 487 S.W.3d 57 (Mo. App. 2016) …………….…………….. 25

*Lee v. Pine Bluff Sch. Dist.*, 472 F.3d 1026 (8th Cir. 2007) …………………………………. 27

*Martin v. North Kansas City Sch. Dist.*, Case No. 4:17–cv–00073–FJG, 2018 WL 614966 (W.D. Mo. Jan. 29, 2018) ………………………………………………………………… 14, 15

*McLain v. Meier*, 612 F.2d 349 (8th Cir. 1979) …………………………………………….... 12

*Monell v. Department of Social Servs.,* 436 U.S. 658 (1978) ………………………….…..… 27

*Norton v. Smith*, 782 S.W.2d 775 (Mo. Ct. App. 1989) ……………………………………..... 26

*Pearson v. Callahan*, 555 U.S. 223 (2009) ………………………………………………… 28

*Pollock v. Wetterau Food Distrib. Grp.,* 11 S.W.3d 754 (Mo.Ct.App.1999) …………………. 16

*Rowe v. Hussmann Corp.*, 381 F.3d 775 (8th Cir. 2004) ……………………...……………… 16

*Southers v. City of Farmington*, 263 S.W.3d 603 (Mo. banc 2008) …………………………. 21

*Springdale Educ. Ass'n v. Springdale Sch. Dist.*, 133 F.3d 649 (8th Cir. 1998) …………….. 27

*State ex rel. Diehl v. O'Malley*, 95 S.W.3d 82 (Mo. banc 2003) ………………………………. 14

*State ex rel. Tivol Plaza, Inc. v. Missouri Comm'n on Human Rights*, 527 S.W.3d 837 (Mo. banc 2017) ……………….…...……………………………………………………… 15-16

*Wilson v. Myers*, 823 F.2d 253 (8th Cir. 1987) ……………………………………………..… 12

*Woods v. Ware*, 471 S.W.3d 385 (Mo. App. W.D. 2015) …………………………………… 21

Case 2:18-cv-04060-BCW   Document 75   Filed 11/19/18   Page 3 of 30

STATUTES

20 U.S.C. §§ 7941 through 7948 ……………………………………………….... 25

20 U.S.C. § 7946 …………………………………………………………….... 25

42 U.S.C. § 1983 …………………………………………………………….... 27

§ 213.065 R.S. Mo. …………………………………………………………... 19-20

§ 213.075 R.S. Mo. …………………………………………………………. 13, 16-17

§ 213.111 R.S. Mo. …………………………...…………………….………... 13-14, 15-16, 17

RULES

FED. R. CIV. PRO. 56 ………………………………...…………………...………... 11

Case 2:18-cv-04060-BCW   Document 75   Filed 11/19/18   Page 4 of 30

I. **PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF UNCONTROVERTED MATERIAL FACTS**

1.      Admitted.

2.      Admitted.

3.      Admitted.

4.      Plaintiff notes that the cited page is omitted from the exhibit.  Plaintiff admits that JCHS consists of grades 10 – 12.  Plaintiff controverts that JCHS is "the high school" of the District inasmuch as Simonsen is the ninth-grade center for the District.  *See* Exhibit A, James Deposition Excerpts, p. 9, ll. 10-18.

5.      Admitted.

6.      Admitted.

7.      Admitted.

8.      Admitted.

9.      Admitted.

10.      Admitted.

11.      Admitted.

12.      Admitted.

13.      Admitted.

14.      Admitted.

15.      Admitted.

16.      Admitted.

17.      Admitted.

18.      Admitted.

19. Controverted. L.B. testified that "it wasn't [consensual]" but that she "was told to say it was" by Jerome Buschman and that she did what Jerome told her to do because she "was scared." *See* L.B. Deposition [Doc. # 71-1], p. 66, ll.1-7.

20. Admitted. L.B. further testified that her sex with Jerome Buschman on September 9, 2016, was not consensual. *See* L.B. Deposition [Doc. # 71-1], p. 49, ll. 20-22.

21. Admitted.

22. Admitted.

23. Admitted.

24. Admitted.

25. Admitted.

26. Admitted.

27. Admitted.

28. Admitted.

29. Admitted.

30. Admitted.

31. Admitted.

32. Admitted.

33. Admitted.

34. Admitted.

35. Admitted.

36. Controverted. L.B. testified that she does not know whether or not Defendant James took a personal role in her dismissal from school. *See* L.B. Deposition [Doc. # 71-1], p. 106, ll. 17-25.

37.     Admitted.

38.     Controverted.  L.B.'s testimony speaks for itself.  *See* L.B. Deposition [Doc. # 71-1], p. 107, ll. 16-19.

39.     Admitted.

40.     Controverted.  L.B. testified that she does not know whether or not Defendant James personally denied her accommodations.  *See* L.B. Deposition [Doc. # 71-1], p. 123, ll. 1-3.

41.     Admitted.

42.     Admitted.

43.     Admitted.

44.     Admitted.

45.     Admitted.

46.     Admitted.

47.     Admitted.

48.     Admitted.

49.     Admitted.

50.     Admitted.

51.     Admitted.

52.     Admitted.

53.     Plaintiff admits that Jerome Buschman testified about an incident when he "grabbed ahold of [L.B.'s] bra" during the summer of 2016.  *See* Jerome Buschman Deposition [Doc. # 71-4], 13:17 – 14:4.

54.     Admitted.

55.     Plaintiff admits that Jerome Buschman testified that he was "pretty sure" he had sexual intercourse with L.B. before school started.  Doc. # 71-4, 19:23.  He also testified, however, that the encounter happened after August 12, 2016.  *See* Exhibit B, Jerome Buschman Deposition Excerpts, 62:2-13.  Defendant James testified that the first day of school that year was approximately August 19.  *See* Exhibit A, 23:5-6.

56.     Controverted.  L.B. denied under oath that calling her out of school on September 9, 2016, was her idea.  *See* L.B. Deposition [Doc. # 71-1], p. 37, ll.14-17.  *See also* Exhibit C, Affidavit of L.B.

57.     Admitted.

58.     Admitted.

59.     Plaintiff controverts that L.B. asked Jerome Buschman to call the school on September 23, 2016.  *See* Exhibit C.

60.     Admitted.

61.     Plaintiff controverts that L.B. requested Jerome Buschman to call the school on November 11, 2016.  *See* Exhibit C.

62.     Admitted.

63.     Admitted.

64.     Controverted.  *See* Exhibit C, ¶ 4.

65.     Plaintiff admits that Jerome Buschman testified as such, but she controverts that testimony.  *See* Exhibit C, ¶ 4.

66.     Admitted.

67.     Admitted.

68.     Admitted.

69.     Admitted.

70.     Admitted.

71.     Plaintiff admits that Jerome Buschman testified as such, but she controverts that testimony. *See* Exhibit C, ¶ 3.

72.     Admitted.

73.     Admitted.

74.     Plaintiff admits that Policy JEDB contains the quoted language; however, that language does not apply to the more specific situation of Early Dismissal, which has very detailed requirements set forth in the same document. *See* Doc. # 71-8 at pp. 4-5.

75.     Plaintiff admits that Policy JEDB contains the quoted language; however, that language does not apply to the more specific situation of Early Dismissal, which has very detailed requirements set forth in the same document. *See* Doc. # 71-8 at pp. 4-5.

76.     Plaintiff admits that Policy JEDB contains the quoted language; however, that language does not apply to the more specific situation of Early Dismissal, which has very detailed requirements set forth in the same document. *See* Doc. # 71-8 at pp. 4-5.

77.     Admitted.

78.     Admitted.

79.     Admitted.

80.     Admitted.

81.     Plaintiff admits that Defendant James testified as such; however, that requirement as written applies to "[a]ny person requesting release of a student," without the modification that James inferred. *See* Doc. # 71-8, p. 5.

82.     Admitted.

83.     Admitted.

84.     Admitted.

85.     Admitted.

86.     Admitted.

87.     Admitted.

88.     Admitted.

89.     Admitted.

90.     Admitted.

91.     Admitted.

92.     Plaintiff admits that Defendant James testified that such would be the standard procedure. However, the uncontroverted testimony in this case is that absolutely none of that happened on any of the times when Jerome Buschman called. *See* Exhibit B, 65:17-25.

93.     Plaintiff admits that Defendant James testified that such would be the standard procedure. However, the uncontroverted testimony in this case is that absolutely none of that happened on any of the times when Jerome Buschman called. *See* Exhibit B, 65:17-25.

94.     Plaintiff admits that Defendant James testified that such would be the standard procedure. However, the uncontroverted testimony in this case is that absolutely none of that happened on any of the times when Jerome Buschman called. *See* Exhibit B, 65:17-25.

95.     Admitted.

96.     Admitted. However, on May 10, 2016, two prior Charges of Discrimination were filed with the MCHR: one signed by L.B. and one signed by counsel. *See* Exhibit D.

97.     Admitted.

98.     Admitted.

99.    Admitted.

100.    Admitted.

101.    Admitted.

102.    Admitted.

II.    **PROCEDURAL BACKGROUND**

Plaintiff's First Amended Complaint [Doc. # 28] ("the Complaint") brought eight counts against three Defendants: Jefferson City Public Schools ("the District"); Robert James, principal of Jefferson City High School ("JCHS"); and John Doe, whom Plaintiff has moved to name as Deborah Kramer, *see* Doc. # 64. Defendants' Motion for Summary Judgment [Doc. # 70] ("the Motion") seeks judgment on all eight counts of the Complaint, and Defendants elaborate their arguments in Defendants' Suggestions in Support of Their Motion for Summary Judgment [Doc. # 71] ("Defendants' Suggestions").

On October 26, 2018, the Court dismissed Count II and denied Defendants' Motion for Judgment on the Pleadings on Count I. See Doc. # 72 ("the October 26 Order"). Accordingly, these Suggestions do not address any arguments regarding Count II or § 213.070 R.S. Mo. (at pages 23-24 of Defendants' Suggestions). Nor do they address the issues regarding § 213.065 R.S. Mo. of which the October 26 Order disposed (at pages 20-22 of Defendants' Suggestions).

## III.   STANDARD FOR JUDGMENT

Summary judgment may not be granted unless "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. PRO. 56(a).  It is "a harsh remedy and is to be granted sparingly; the burden is on the movant to show that he is entitled to the judgment sought."  *McLain v. Meier*, 612 F.2d 349, 355–56 (8th Cir. 1979).  "The case is to be viewed in the light most favorable to the party opposing the motion, and he is to be granted the benefit of all inferences favorable to him that the record warrants."  *Id.* at 356.  "Summary judgment is not a substitute for the trial of disputed fact issues" and "is not designed to weed out dubious claims, but to eliminate those claims with no basis in material fact."  *Wilson v. Myers*, 823 F.2d 253, 256 (8th Cir. 1987).  The Supreme Court of the United States has suggested that summary judgment must be granted "with caution" and that the District Court may deny summary judgment "in a case where there is reason to believe that the better course would be to proceed to a full trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).


## IV.   LEGAL ARGUMENT

For the benefit of the Court, these Suggestions will track the structure of Defendants' Suggestions to the extent appropriate.  Part A will show why Plaintiff's claim in Count I, under the Missouri Human Rights Act ("MHRA"), survives summary judgment.  Part B will support the validity of Counts III, IV, and V, which are the Complaint's state-law negligence claims.  Part C will argue against summary judgment on Count VI, which arises under § 1983 of the Civil Rights Act.

**A.** **Count I states a viable claim under the MHRA and is well-supported by facts in the record.**

This part addresses the arguments in Defendants' Motion which were not disposed by the October 26 Order. First, Count I is not time-barred. Second, Defendant James is a proper party even though his name did not appear in the Charge of Discrimination. Third, the individual Defendants had sufficient personal involvement to justify their liability. Each of these arguments is made separately below.

*1.* *Count I is not time-barred.*

Defendants argue that Count I is time-barred because, they allege, the Charge of Discrimination was not filed within 180 days of the last date of discrimination. However, their arguments fail under case law from not only this Court but also the Supreme Court of Missouri. This civil action and the Charge of Discrimination were both filed within the required timelines.

To be clear, three distinct timelines from the MHRA are pertinent here. First, a person claiming discrimination must file a complaint with the Missouri Commission on Human Rights ("MCHR") within 180 days after the act of discrimination. § 213.075.1 R.S. Mo. Second, the claimant may demand a right to sue letter from the MCHR if the Commission has not completed its administrative processing 180 days from the filing of the complaint. § 213.111.1 R.S. Mo. Third, after a right to sue letter has been issued, the claimant must file a civil action within 90 days, "but no later than two years after the alleged cause occurred or its reasonable discovery by the alleged injured party." *Id.*

Defendants argue that the Charge of Discrimination was untimely and that the MCHR lacked jurisdiction over it. However, that argument is the same one that the Supreme Court of Missouri rejected in *Farrow v. Saint Francis Med. Ctr.*, 407 S.W.3d 579 (Mo. banc 2013). In *Farrow*, the defendant argued that the plaintiff filed her charge of discrimination 230 days after

the alleged act of discrimination. *Id.* at 588. Nevertheless, the MCHR issued her a right to sue letter. *Id.* The Court found that when the MCHR "exercised its authority to issue the right to sue letter," the Commission "implicitly" found that the "claim was timely." *Id.* at 589.

The Supreme Court of Missouri held that it is § 213.111 R.S. Mo. which "governs the filing of a suit alleging violations of the MHRA in circuit court." *Id.* at 591. The Court held:

> the only requirements imposed by section 213.111 to file a claim under the MHRA are that: (1) an employee file a charge with the Commission prior to filing a state court action; (2) the Commission issue a right to sue letter; and (3) the state court action be filed within ninety days of the issuance of the right to sue letter but no later than two years after the alleged cause occurred or its reasonable discovery by the alleged injured party.

*Id.* The Court refused to read the word <u>timely</u> into § 213.111.1, *id.*; and because the plaintiff met the three requirements of that section, her civil suit was allowed to proceed.

In a case more closely analogous to the case at bar, this Court followed the holding and rationale of *Farrow*. In *Martin v. North Kansas City Sch. Dist.*, Case No. 4:17–cv–00073–FJG, 2018 WL 614966 (W.D. Mo. Jan. 29, 2018), the defendant argued that the charge of discrimination had been filed approximately one year after the act of discrimination. The judicial action, however, was filed within 90 days after the right to sue letter's issuance. Relying on *Farrow*, this Court held, "although [plaintiff] did not file her charge against NKC within 180 days of when the alleged assault/rape occurred, this does not preclude her MHRA claim in this court." *Id.* at *4. This Court also noted that the Supreme Court of Missouri, in *State ex rel. Diehl v. O'Malley*, 95 S.W.3d 82, 90 (Mo. banc 2003), called the procedure set out in § 213.111 R.S. Mo. an "alternate path available to a complainant" who wishes to "opt out of the commission's proceedings." *Id.* at *3.

In this case, L.B. met all three requirements of § 213.111.1. A Charge of Discrimination was filed with the MCHR prior to the filing of the judicial action. There is no dispute that the

MCHR issued its right to sue letter on December 19, 2017. *See* Doc. # 28, ¶ 52 at p. 7 *and* Doc. # 31, ¶ 52 at p. 6. The state court action was commenced on March 16, 2018, see Doc. # 1-4— fewer than 90 days after the right to sue letter's issuance and fewer than two years after the first incidents described in the First Amended Complaint. Therefore, under both *Farrow* and *Martin*, Defendants' timeliness argument fails.

Defendants' argument under *State ex rel. Tivol Plaza, Inc. v. Missouri Comm'n on Human Rights*, 527 S.W.3d 837 (Mo. banc 2017), seems to confuse the 180-day timeline under § 213.111 with the 180-day timeline under § 213.075. In *Tivol*, a former employee filed a charge of discrimination, complaining of actions by her employer occurring during her 20-month employment. The employer argued to the MCHR that the Commission had no jurisdiction over any actions that occurred more than 180 days before the filing of the charge of discrimination (the § 213.075 period). *Id.* at 838. Nevertheless, the MCHR issued its right to sue letter when 180 days had elapsed after the Charge's filing (the § 213.111 period). *Id.* at 839. The employer filed a writ of mandamus, seeking to have the court vacate the right to sue letter. *Id.*

The holding in *Tivol* is that, once the MCHR issues a right to sue letter after the § 213.111 period, it loses jurisdiction over the administrative action. The employers in *Tivol* wanted the MCHR to determine its jurisdiction after the issuance of a right to sue letter. The Court held that the MCHR loses all authority to process the complaint at that point because, under § 213.111, "[u]pon issuance of this notice [the right to sue letter], the commission shall terminate all proceedings relating to the complaint." § 213.111.1 R.S.Mo. *Tivol* emphatically does not mean "there is no jurisdiction over these claims as a matter of law," as argued by Defendants, Doc. # 71 at p. 19. *Tivol* means merely that, when the right to sue letter was requested more than 180 days after the filing of the Charge of Discrimination, the MCHR lacked

authority to do anything other than issue the letter and close its file. *Tivol*, 527 S.W.3d at 843 (analyzing § 213.111.1 R.S.Mo.).

Moreover, the Charge of Discrimination was timely. While the Complaint arises from events beginning on September 9, 2016, and continuing through November 11, 2016, the Defendants' pattern of conduct constitutes a continuing violation. "Missouri applies a two-part test to determine if a plaintiff has shown a continuing violation." *Rowe v. Hussmann Corp.*, 381 F.3d 775, 782 (8th Cir. 2004). "The plaintiff must first 'demonstrate that at least one act occurred within the filing period' and, second, must show 'that the harassment is a series of interrelated events, rather than isolated or sporadic acts of discrimination.'" *Id.* (quoting *Pollock v. Wetterau Food Distrib. Grp.,* 11 S.W.3d 754, 763 (Mo.Ct.App.1999)). "If the plaintiff proves both, 'the 180–day filing period becomes irrelevant ... [and][s]he may then offer evidence of the entire continuing violation.'" *Id.*

Defendants' consistent and repeated violations of their policies were interrelated events which, as argued below, were part of a custom of the District. On May 10, 2016, L.B. filed her Charge of Discrimination with the MCHR. *See* Exhibit D, MCHR Filing Documents. The first Charge was signed under oath by her counsel, in accordance with the MHRA. "The complainant's agent, attorney or the attorney general may, in like manner, make, sign and file such complaint." § 213.075.1 R.S. Mo. The Commission rejected that Charge on grounds not found in the MHRA, and then rejected the Charge signed by L.B. on grounds that she was a minor. *See* Exhibit D. On the next day, Michael Buschman filed the Charge of Discrimination on behalf of L.B.

One of two propositions must be correct. One or both of the May 10, 2016, filings was sufficient under the MHRA. Or Michael Buschman was the proper complainant on the Charge

of Discrimination. If the latter proposition is correct, then the limitations period did not begin to run until Mr. Buschman discovered the unlawful conduct. It is uncontroverted that Mr. Buschman found out on January 20, 2017. *See* Defendants' Suggestions, p. 8, ¶ 29. In that case, May 20, 2017, was well within the 180-day period prescribed in § 213.075.1 R.S. Mo.

Under any equitable rule, the Charge of Discrimination was timely. Regardless, case law from both this Court and the Supreme Court of Missouri establishes that the 90-day timeline in § 213.111.1 R.S. Mo. is the one that matters here. For either or both reasons, Count I is not time-barred.

### 2.    *Defendant Robert James is a proper party.*

Defendants' next argument is that Defendant Robert James, the principal of JCHS, is not a proper party because the Charge of Discrimination did not name him individually as a respondent. However, "[t]he fact that she did not specifically name [the individual] is not fatal to a prospective MHRA claim." *Hill v. Ford Motor Co.*, 324 F. Supp. 2d 1028, 1034 (E.D. Mo. 2004). "The courts have recognized several exceptions to this general rule that a defendant must first be named in the administrative charge." *Id.* "Two exceptions recognized by the courts are the 'identity of interests' and the 'actual notice' exceptions." *Hill*, 324 F. Supp. 2d at 1034 (citing, inter alia, *Greenwood v. Ross*, 778 F.2d 448, 451 (8th Cir. 1985)).

*Greenwood* illustrates the 'identify of interests' exception. In *Greenwood*, the plaintiff filed an agency complaint against his former employer, the University of Arkansas at Little Rock ("UALR"). Later, he filed suit and named Dr. Robert Ross, the university's chancellor, and Happy Mahfouz, its athletic director, as defendants. Ross and Mahfouz argued that they could not be sued because they had not been named as respondents in the agency complaint. The plaintiff conceded that his agency complaint "did not name Ross and Mahfouz individually," but

he argued "that the naming of UALR was sufficient because Ross, as chancellor, and Mahfouz, as athletic director, were supported and directed by and acted on behalf of UALR with complete identity of interest." *Greenwood*, 778 F.2d at 450. The court agreed with the plaintiff and found an identity of interests between UALR and the individual defendants: "Ross and Mahfouz, as chancellor and athletic director of UALR, respectively, were supported and directed by and acted on behalf of the University of Arkansas in the University's employment relationship with appellant." *Id.* at 451.

With respect to the 'actual notice' exception, another district court in Missouri found in an MHRA case that actual notice could be inferred from organizational relationships among the parties. In *Giandinoto v. Chemir Analytical Servs., Inc.*, 545 F. Supp. 2d 952 (E.D. Mo. 2007), the plaintiff had filed an MCHR complaint against his employer, Chemir. Later, the plaintiff filed suit against Chemir and three individuals: Thanedar, Dowell, and Harries. The individual defendants moved for dismissal on grounds that they had not been named in the MCHR, but the court concluded that they must have had notice of the charge.

The court reasoned, "These individuals were all Plaintiff's supervisors, and Thanedar is the chief executive officer and owner of Chemir." *Id.* at 958. "While the only name and address listed on the Charges as committing the unlawful discriminatory practice was Chemir's, the Court finds no reason to believe that Thanedar, Dowell and Herries were not on notice of these Charges." *Id.* at 959. The court noted that, if the individuals could "demonstrate that [they] were not on notice of the charges, did not have an opportunity to conciliate, or that their interests were not substantially the same as Chemir's," then their dismissal "may be appropriate." *Id.* at 959.

In this case, Defendant James had such an identity of interests with the District that actual notice may be inferred; and he has not demonstrated or even suggested that he lacked notice of the Charge of Discrimination. The Charge prominently complained about the actions of "school officials" at JCHS. *See* Doc. # 71-7, p. 6. It cited the school's dismissal policies, *id.*, which by their own terms make the building's principal responsible. *See* Doc. # 71-8, pp. 4-5. Under the circumstances, Defendant James has, as in *Greenwood*, "complete identity of interests" with the District, such that actual notice of the Charge can be inferred. Moreover, Defendant James has offered no evidence that he somehow lacked notice of the Charge of Discrimination.

Defendant James is a proper party to Count I because he has an identity of interests with the District and he has not rebutted the presumption that he had notice of the Charge of Discrimination.

3. *The individual Defendants had sufficient personal involvement in the violations to be liable under the MHRA.*

Defendants' Suggestions argue that Defendant James may not be liable under Count I because he was not personally involved in the violations alleged. However, both he and Defendant Doe are implicated by the policies at issue and their failures to follow those policies.

In *Doe ex rel. Subia v. Kansas City, Mo. Sch. Dist.*, 372 S.W.3d 43 (Mo. App. 2012), the plaintiff alleged that he was sexually harassed and assaulted by another elementary student on multiple occasions at school. *Id.* at 46. Plaintiff's theory was that, due to the school district's actions and inactions, he was deprived of the full, free, and equal use and enjoyment of the school, which is a place of public accommodation, and of its services. *Id.*

The court considered the school district's liability where no school official has personally engaged in the harassment. The court noted that the Act "prohibits a person from 'directly or indirectly' denying another person any of the benefits of a public accommodation." *Id.* (quoting

§ 213.065.2 R.S. Mo.). The inclusion of the modifier <u>indirectly</u> means, "the statute also contemplates liability for a party who does not personally engage in the discriminatory acts but who is responsible for the denial of the advantages, facilities, services, or privileges of a public accommodation that results from another's discriminatory acts." *Subia*, 372 S.W.3d at 51. Critically, the court made clear that the plaintiff was "not trying to hold the School District liable for the perpetrator's conduct but [was] instead trying to hold the School District liable for its own conduct." *Id.* Thus, the school district was not vicariously responsible for the sexual harassment and assault of the perpetrator, but it was directly liable for remaining idle when it knew or should have known of the harassment.

In this case, several policies of the District are at issue. One of the most prominent is Policy JEDB, which requires "the building principal or designee" to give and to have "direct prior approval and knowledge" before a student may be "excused into any person's custody." Doc. # 71-8, p. 4. Defendant James was the building principal at JCHS during the relevant time. Defendant Doe was the designee, who has been discovered to be Deborah Kramer. James and Kramer are therefore the individuals responsible, under Policy JEDB, for ensuring (1) that students be released only "to the parent, guardian, designee of the parent or guardian, or other individuals or agencies permitted or required by law," *id.*; that telephone requests for early dismissal be refused unless "the caller can be positively identified as the student's parent or guardian," *id.*; and that any person requesting release of a student "present proper identification prior to release of the student," *id.* at 5. By failing in their responsibilities under Policy JEDB, the individual Defendants are at least "indirectly" responsible for the denial to L.B. of the advantages, facilities, services, or privileges of JCHS that resulted from their allowing Jerome Buschman to call L.B. out of school. See *Subia*, 372 S.W.3d at 51.

The personal involvement of the individual Defendants is ample to hold them liable under the MHRA.

**B.** **The immunities claimed by the Individual Defendants are not available to them because of their egregious breaches of ministerial duties.**

Defendants' Suggestions posit two general reasons why the state-law negligence claims in Counts III, IV, and V fail against the individual Defendants: no breach of duty and, in any case, immunities under common law and statute. The breaches of duty by James and Kramer are discussed throughout these Suggestions. Thus, this part rebuts the arguments that immunities from common law and federal statute apply to the individual Defendants.

*1.* *Official immunity does not apply because the Individual Defendants breached ministerial duties.*

Defendant James asserts that he is qualified to official immunity. However, neither James nor Defendant Doe is entitled to official immunity because the policies that they violated established ministerial duties.

Official immunity protects public officials from liability for alleged acts of ordinary negligence committed during the course of their official duties for the performance of discretionary acts. *Woods v. Ware*, 471 S.W.3d 385, 391 (Mo. App. W.D. 2015). It does not provide public employees immunity for torts committed when acting in a ministerial capacity. *Id.* at 392. A ministerial function is one that a public officer is required to perform upon a given state of facts, in a prescribed manner, in obedience of the mandate of legal authority, without regard to his own judgment or opinion concerning the propriety of the act to be performed. *Southers v. City of Farmington*, 263 S.W.3d 603, 610 (Mo. banc 2008).

A very recent case from the Missouri Court of Appeals illustrates official immunity in the school setting. In *J.M. v. Lee's Summit Sch. Dist.*, 545 S.W.3d 363 (Mo. App. W.D. 2018), a

student was injured while playing softball during an after-school program. A school district policy in that case stated, "When protective equipment is provided, all persons are required to use the equipment as directed." *Id.* at 372. Before the students played, a teacher ("Bishop") instructed them that anyone playing catcher was required to wear a face mask. *Id.* at 367. The plaintiff was provided a face mask; but when it did not fit, the teacher's assistant ("DeMarco") allowed the plaintiff "to play catcher without the facemask but stand further back, closer to the fence behind the plate." *Id.* at 368. Inevitably, the student was injured because he was not wearing the face mask.

When the student sued DeMarco, the defendant claimed official immunity. However, the court held that DeMarco had violated a ministerial duty. The court acknowledged, "DeMarco's duty was to conduct and supervise the students playing a game of softball, which required him to exercise some discretion." *Id.* at 372. "However, DeMarco was provided specific direction from Bishop that all players were to wear facemasks and the other protective gear provided by the District when playing the catcher position." *Id.* Thus, "when read together the policies coupled with the direct instruction from Bishop, DeMarco was without discretion regarding the use of the protective mask for any student playing catcher during the game." *Id.* at 372-73. The court concluded, "By not requiring J.M. to wear a facemask, DeMarco failed to perform a required ministerial act." *Id.* at 373.

Several features of the *J.M.* case stand out here. First, the ministerial duty was defined by synthesizing board policy and teacher instructions; in other words, the mandate for catchers to wear face masks was not specifically written or promulgated. Second, although the general act of supervising a softball game involved some discretion, the requirement that catchers wear face masks was not discretionary. Third, even though the student had been instructed that the face

mask was required, he was still allowed to sue DeMarco. Fourth, the injury suffered was precisely the harm that the policy was intended to prevent.

In this case, Policy JEDB sets forth ministerial duties. The first requires "the building principal or designee" to give and to have "direct prior approval and knowledge" before a student may be "excused into any person's custody." Doc. # 71-8, p. 4. The second ministerial duty established by Policy JEDB is to release students only "to the parent, guardian, designee of the parent or guardian, or other individuals or agencies permitted or required by law." *Id.* The third ministerial duty is to refuse telephone requests for early dismissal unless "the caller can be positively identified as the student's parent or guardian." *Id.* The fourth ministerial duty is to require any person requesting release of a student to "present proper identification prior to release of the student." *Id.* at 5.[1]

Defendants violated all of these duties on each occasion when Jerome Buschman called to have L.B. dismissed early from school. Jerome testified that, on the four times he called the school to request L.B.'s dismissal, he never identified himself. Exhibit B, p. 65, ll. 17-21. He was never asked to identify himself, let alone to prove who he was. *Id.* at ll. 22-25. Crucially, Jerome testified that, if he had been required to show identification, he would not have called L.B. out of school. *Id.* at p. 66, ll. 10-13. Moreover, when he was calling, he did not know L.B.'s date of birth, social security number, student ID number, or family-requested PIN. *Id.* at p. 66, l. 22 to p. 67, l. 5. If he had been asked for any of that information, he would have been unable to provide it. *Id.* at p. 67, ll. 6-9.

---

[1] Each of the duties established by Policy JEDB is reiterated in the Student Handbook. The principal's (or designee's) duty of "direct prior approval and knowledge" and the duty to release students only "to the parent, guardian, [or] designee" are printed on page 28. See Doc. # 71-8, p. 33. The duty of positive identification of a caller appears on page 29. See *id.* at p. 34. The duty to require presentation of "prior identification prior to release of the student" is printed twice: once on page 20 (*id.* at 25) and again on page 29 (*id.* at 34).

Defendant James had an opportunity to rebut Jerome Buschman's testimony, but he had no information to dispute what Jerome said about his phone calls with the school. James could not dispute Jerome's statement that the school did not even ask Jerome who he was. Exhibit A, 67:19 – 68:4; *see also* 70:7-11. James admitted that failing to ask the caller to identify himself was a violation of policy. *Id.* at p. 68, ll. 14-22; *see also* 70:23 – 71:4. James was asked specifically about the call on October 14, 2013; but again, he had no way to dispute Jerome Buschman's testimony. *Id.* at 72:6-10.

James is not aware of any time when an employee of the high school or the school district requested identification from Jerome Buschman. *Id.* at 75:13-17. He admitted that, on the four occasions at issue, L.B. was released to someone other than her parent, guardian, or designee. *Id.* at 76:11-19. Finally, James said that if he did have information about any time when a school employee sought and obtained identifying information from Jerome Buschman, he would have disclosed it. *Id.* at 80:24 – 81:4.

The uncontroverted facts in this case are that, on the four dates mentioned in the Complaint, Defendants violated their own policies, as described above. Although school supervision in general entails some discretion, the policies at issue here leave no discretion. In this case, the policies are clear statements from the board of education, re-printed in the student handbook with no need for interpretation and no room for improvisation. As in *J.M.*, the harm that resulted from the failures to follow the policies was the very type of harm that the policies at issue were created to prevent. L.B.'s knowledge of the policies, like *J.M.*, does not excuse Defendants from failing to follow those policies.

This case falls squarely under *J.M.*; official immunity is not available to the individual Defendants.

2. _Defendant James is not immune to Counts III, IV, and V under the Coverdell Act._

Defendant James also claims immunity under the Paul D. Coverdell Teacher Protection Act of 2001, 20 U.S.C. §§ 7941 through 7948 ("the Coverdell Act"). However, James has failed to establish that the elements of the Coverdell Act apply to his defense.

In order to benefit from the Coverdell Act, a defendant must "establish[] every element of Coverdell immunity." _Lackey v. Iberia R-V Sch. Dist._, 487 S.W.3d 57, 61 (Mo. App. 2016). In this case, two elements are missing from the record. First, James fails to identify which "Federal, State, [or] local laws (including rules and regulations) in furtherance of efforts to control, discipline, expel, or suspend a student or maintain order or control in the classroom or school," his failures were in conformity with. _See_ 20 U.S.C. § 7946(a)(2). It cannot be enough merely to say that Defendant James was "acting within the scope of his employment or responsibilities to the school in furtherance of efforts to control, discipline, expel, or suspend a student or maintain order or control in the classroom or school." _See_ Doc. 71, p. 32. That is merely a threadbare recital and mash-up of two of the elements of the Coverdell Act.

Further, the Coverdell Act does not apply for much the same reason that official immunity is not available. As thoroughly demonstrated above, Defendants James and Doe repeatedly failed to follow the clearly-stated, well-publicized policies of JCSD. Although their failures might not constitute "criminal misconduct," they do qualify as "gross negligence; reckless misconduct; or a conscious, flagrant indifference to the rights or safety of the individual harmed." _See_ 20 U.S.C. § 7946(a)(4). What happened to L.B. was not due to a lapse in judgment or an exercise of discretion; it was caused by a consistent, utter failure to follow policies, reflecting at minimum a conscious, flagrant indifference to her rights and safety.

### 3.    *The Public Duty Doctrine does not apply to this case.*

The Public Duty Doctrine holds, "breach of a duty owed by a public official only to the general public will support no cause of action brought by an individual who is injured thereby." *Norton v. Smith*, 782 S.W.2d 775, 777 (Mo. Ct. App. 1989). "A public official, however, is liable to an individual for his failure to perform a ministerial duty imposed on him by statute when that statute creates a duty to the individual." *Id.* "At a minimum, the would-be plaintiff must be a member of a class for whose benefit the statute was enacted." *Id.*

Defendants have cited, and Plaintiff has found, no controlling case in which a school principal or secretary benefited from the Public Duty Doctrine. This lack of support might be because school employees are not "public officials" as contemplated by this doctrine. Or it might be because their duties are not owed "only to the general public." It bears noting that L.B.'s claims do not arise from statute or state regulation, but from school-district policies, which apply only, in her case, to JCHS students.

Indeed, the duties described in the Complaint are owed to students in school, not to the general public. School principals and secretaries owe duties to the students in their buildings— who are members of a class for whose benefit the policies were enacted. These are not anonymous members of the general public; they are children whose parents entrust them to the care of the schools during the school day. To give the individual Defendants the protection of the Public Duty Doctrine would be unsupported by law and indefensible as policy.

This is not the case where ground should be broken to apply the Public Duty Doctrine to school principals and secretaries.

**C.    The District and the Individual Defendants may be liable under § 1983.**

A school district may be liable under § 1983 where the student's rights are violated pursuant to an official policy or custom.  *Lee v. Pine Bluff Sch. Dist.*, 472 F.3d 1026, 1031-32 (8th Cir. 2007).  The idea that a school district is not a "person" under § 1983 is belied by the cases cited in this part such as *Lee* and *Springdale*.

"A municipality is liable under § 1983 for unconstitutional acts by its officials or employees that implement or execute a municipal custom or policy."  *Harris v. City of Pagedale*, 821 F.2d 499, 504 (8th Cir. 1987).  "A municipal custom is a practice of municipal officials that is not authorized by written law, but which is 'so permanent and well-settled ... as to [have] the force of law.'"  *Id.*, n.7 (quoting *Monell v. Department of Social Servs.,* 436 U.S. 658, 691 (1978)).  "[A]ctions performed pursuant to a municipal 'custom' not formally approved by an authorized decisionmaker 'may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law.'"  *Springdale Educ. Ass'n v. Springdale Sch. Dist.*, 133 F.3d 649, 651 (8th Cir. 1998) (quoting *Board of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 404 (1997)).

In this case, the District has official policies which, if followed, would have prevented the injuries that L.B. suffered.  Those policies dictated procedures for which the principal, Robert James, was responsible and which he could delegate to a designee.  *See* Doc. # 71-8 at pp. 4-5.  So, although Defendant James did not have policy-making authority, he did have the delegated duty to ensure the dictated procedures were followed.  Thus, either Defendant James or his designee, Deborah Kramer, did carry the official authority from the District to implement and enforce the procedures under the policies that have been described and discussed in these Suggestions, the Complaint, and throughout the pleadings.

The consistent violations of the policies at issue were so widespread and well-settled that they rise to the level of a custom. It is uncontroverted that, on each of the occasions mentioned in the Complaint, Defendants violated the policies in the same manner. *See* Exhibit B, 65:17-25. Defendants have added that, on the occasions when L.B.'s mother called for her Early Dismissal, they proceeded in the same way. *See* Defendants' Suggestions, p. 8, ¶ 28. Defendants have established that they followed the same policy-violating practice with respect to L.B.'s brother. *See* Defendants' Suggestions, p. 9-10, ¶ 44. Indeed, Defendants claim that exactly the same process applies to every student in the District. *Id.* at p. 8, ¶ 32.

Throughout this litigation, Defendants have insisted that their approach to Policy JEDB has been consistent across the board and through the years and that L.B.'s treatment was not unique. Defendant James testified about hypothetical procedures; but no instance of such procedures has been supported with evidence or even identified, and the call incidents that are the subject of this case all feature gross violations of the policies. Granting that it seems true that the District and its officials have evidently never followed Policy JEDB, that conduct must be deemed so widespread and well-settled as to constitute a custom of the District. *See* ¶¶ 92-94 of Plaintiff's Response to Defendants' Statement of Uncontroverted Material Facts, above.

As under the MHRA case law, third-party sex assault of a female student may constitute sex discrimination. See, *e.g.*, *Davis v. Monroe County Bd. Of Educ.*, 526 U.S. 629 (1999) (recognizing a cause of action under Title IX) and *Fitzgerald v. Barnstable Sch. Committee*, 555 U.S. 246 (2009) (holding that the same set of facts could support both a Title IX and a § 1983 claim). Further, the deprivation of L.B.'s right to public education is evident, as is the causal relationship between the official custom here and the constitutional deprivation.

Qualified immunity is unavailable where (1) the plaintiff can show a violation of a constitutional right and (2) the constitutional right was "clearly established" at the time the defendants allegedly violated it. *Pearson v. Callahan*, 555 U.S. 223, 232-42 (2009). A right is "clearly established" where "a reasonable official would understand that what he is doing violates that right." *Jones v. McNeese*, 675 F.3d 1158, 1161 (8th Cir. 2012). The purpose of qualified immunity is to give "government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011).

The conduct of Defendants in this case cannot be described as reasonable but mistaken judgments about the contours of the applicable case law. *Davis* and *Fitzgerald* show that female students have the right to be free from sex assault while the school is responsible for them. Defendants' inexcusable failures to follow their own policies led directly to L.B.'s assaults at the hands of a now-convicted, felony sex offender. Their decisions were not mistaken judgments about open legal questions; they were egregious violations of clearly-written policy. Qualified immunity should not be available to the individual Defendants; nor should the Coverdell Act, for the reasons stated here and in Part IV.B.2, above.


## V.  <u>CONCLUSION</u>

A jury would be the best arbiter of liability in this case. Defendants' arguments about the timeliness and specificity of the Charge of Discrimination and about the personal involvement of the individual Defendants are wanting. The evidence on the record is ample to support the state-law negligence counts and to defeat the claims of immunity asserted by Defendants. The Section 1983 is also supported by the evidence of a custom of the District, which resulted in the injuries suffered by L.B. Defendants' Motion for Summary Judgment should be denied.

RESPECTFULLY SUBMITTED


 /s/ Daniel J. Rhoads
Daniel J. Rhoads, 59590 MO
THE RHOADS FIRM, LLC
3703 Watson Rd.
St. Louis, MO 63109
Phone:  (314) 225-8848
Fax:  (314) 754-9103
therhoadsfirmllc@gmail.com

*Attorney for Plaintiff*
*L.B., a minor, by and through*
*Next Friend, Michael Buschman*




CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing was filed electronically with the

Clerk of the Court on November 19, 2018,[2] to be served by operation of the Court's electronic

filing system upon:

Christopher Rackers
Ryan Bertels
Schreimann, Rackers & Francka, LLC
931 Wildwood Dr., Suite 201
Jefferson City, MO 65109
cpr@srfblaw.com
rb@srfblaw.com

*Attorneys for Defendants*


 /s/ Daniel J. Rhoads
_____

[2] The CM/ECF service was unavailable from 3:00 p.m. on November 16, 2018, which was the due date, until 8:00 a.m. on Monday, November 19, 2018—thus, the due date effectively became November 19, 2018.